IN the INTEREST OF NADIA S., a person under the age of 18:

SALLIE T., Appellant,†

v.

MILWAUKEE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES and Gloria S., Respondents.

Court of Appeals

No. 96–3147. Submitted on briefs April 8, 1997.—Decided July 8, 1997.

(Also reported in 570 N.W.2d 46.)

†Petition to review granted.

On behalf of the appellant, the cause was submitted on the briefs of *George N. Kotsonis*.

On behalf of the petitioner-respondent State of Wisconsin, the cause was submitted on the brief of *E. Michael McCann*, district attorney, and *Debra M. Sciano*, assistant district attorney.

As guardian ad litem for Nadia S., a brief was filed by *Lisa D. Walker* of *Legal Aid Society of Milwaukee, Inc.*

Before Wedemeyer, P.J., Schudson and Curley, JJ.

CURLEY, J. Sallie T., the foster mother of Nadia S., appeals from an order denying her objection to the transfer of placement of Nadia to Gloria S., her biological mother. She argues that the juvenile court erred both in denying her motion under § 48.64(4)(c), STATS., objecting to the change of placement, and in returning Nadia to her biological mother.[1] She contends that the juvenile court, in construing the sentence found in § 48.64(4)(c), STATS., "The court shall determine the case so as to promote the best interests of the child," gave undue weight to the fact that the biological parent had met the conditions of return contained in the juvenile court's previous dispositional order and that it erroneously exercised its discretion when deciding that it was in Nadia's best interest to be returned to her mother. Further, she challenges the juvenile court's findings that the conditions of return

---

[1] The Wisconsin Legislature made extensive changes to the Children's Code in 1995. All statutory references in this opinion are to the 1995–96 volume unless otherwise indicated.

had actually been met, arguing that many of the recommendations of a psychologist who had testified at the last extension hearing were not followed. Finally, she contends that the juvenile court erred in excluding witnesses she wished to call to prove that the best interests of the child would not be met by returning Nadia to her biological mother.

Because the juvenile court correctly determined that the "best interests of the child" test found in § 48.64(4)(c), STATS., must be read within the overall framework of the Children's Code, and, as a result, a biological parent and a foster parent are not on equal footing in a custody dispute; because the trial court properly exercised its discretion when it found that a change in Nadia's placement was in her best interest; because the conditions of return did not include all of the recommendations made by the psychologist and instead gave the Milwaukee County Department of Health and Human Services' social worker great discretion in determining the future psychological course of the family; and because the excluded witnesses either could not testify to relevant evidence or had not been properly subpoenaed, we affirm.[2]

---

[2] Subsequent to the submission of this case on appeal, this court received correspondence from the guardian ad litem for Nadia S., stating "please be advised that on March 5, 1997 the jurisdiction of the Milwaukee County Circuit Court Juvenile Division expired in the above-captioned matter." We requested the parties file letter briefs advising why circuit court jurisdiction had expired and whether the expiration of jurisdiction made this appeal moot. After reviewing the letter briefs on these questions, this court concludes that the issues that Sallie T. raises on appeal are not moot because they have a "practical legal effect upon a[n] . . . existing controversy." *G.S., Jr. v. State*, 118 Wis. 2d 803, 805, 348 N.W.2d 181, 182 (1984)

## I. BACKGROUND.

This litigation has a long, complicated, and troubling procedural history. Nadia first came to the attention of the juvenile court on a request for an emergency detention in October 1989 when she was several months old. In March 1990, when Nadia was still less than a year old, she was found to be a child in need of protection or services. The original dispositional order placed Nadia with a relative; however, she was eventually placed in the home of the appellant, Sallie T., and her husband, Lucious T., with whom Nadia lived until July 1996. The dispositional order keeping Nadia in foster care was then extended on a yearly basis until 1996.[3]

(citations omitted). Regardless of the expiration of circuit court jurisdiction, all three individuals (Sallie T., Nadia S., and Gloria S.) still need a decision on the merits.

[3] We note that the decisions to continue Nadia in foster care for the first six-and-one-half years of her life appear to run counter to the concerns expressed in § 48.365(2g)(b)3, STATS., which provides:

(b) If the child is placed outside of his or her home, the report shall include all of the following:

. . . .

3. If the child has been placed outside of his or her home for 2 or more years, a statement of whether or not a recommendation has been made to terminate the parental rights of the parents of the child. If a recommendation for a termination of parental rights has been made, the statement shall indicate the date on which the recommendation was made, any previous progress made to accomplish the termination of parental rights, any barriers to the termination of parental rights, specific steps to overcome the barriers and when the steps will be completed, reasons why adoption would be in the best interest of the child and whether or not the child should be registered with the adoption information exchange. If a recommendation for termination of parental rights has not been made, the statement shall include an explanation of the reasons why a recommendation for termination of parental

On March 21, 1996, a court commissioner extended the order for Nadia and her brothers and maintained Nadia's placement with her foster parents. The court commissioner, however, also adopted a permanency plan for the children which recommended a termination of parental rights for the younger brother and the eventual return to the biological mother's home for Nadia and another brother. The court commissioner also ordered the foster parents to cooperate with the visitation of Nadia and her biological mother, Gloria.[4]

In June 1996, Gloria filed a petition formally moving for a revision of the dispositional order to return her daughter to her care. In July, the Department, in agreement with Gloria's wishes, initiated a change of placement of Nadia back to her mother pursuant to § 48.357(1), STATS.[5] The initial

rights has not been made. If the lack of appropriate adoptive resources is the primary reason for not recommending a termination of parental rights, the agency shall recommend that the child be registered with the adoption information exchange or report the reason why registering the child is contrary to the best interest of the child.

As the State conceded in its brief, Nadia's stay with Sallie T. "was, perhaps, too lengthy."

[4] Previously, Sallie T. had been advised by a Department employee that Gloria was considering a voluntary termination of parental rights to Nadia, thereby freeing Nadia for adoption. As Sallie T. wished to pursue the adoption, there was some concern about the foster parents' level of cooperation with visitation.

[5] Section 48.357(1), STATS., provides:

**Change in placement. (1)** The person or agency primarily responsible for implementing the dispositional order, the district attorney or the corporation counsel may request a change in the placement of the child, whether or not the change requested is authorized in the dispositional order and shall cause written notice

appearance on Gloria's petition was scheduled for July 19, 1996. On this date, Gloria's attorney withdrew her petition because there was no apparent objection to the Department's request for a change of placement back to the mother. The juvenile court, noting no objection had been filed by the foster parents, approved the withdrawal of the mother's petition to revise the dispositional order while also approving the Department's request to return Nadia to her mother. Additionally, the juvenile court extended the temporary visitation of Nadia with her mother through

to be sent to the child or the child's counsel or guardian ad litem, parent, foster parent, treatment foster parent or other physical custodian described in s. 48.62 (2), guardian and legal custodian. The notice shall contain the name and address of the new placement, the reasons for the change in placement, a statement describing why the new placement is preferable to the present placement and a statement of how the new placement satisfies objectives of the treatment plan ordered by the court. Any person receiving the notice under this subsection or notice of the specific foster or treatment foster placement under s. 48.355 (2)(b)2. may obtain a hearing on the matter by filing an objection with the court within 10 days of receipt of the notice. Placements shall not be changed until 10 days after such notice is sent to the court unless the parent, guardian or legal custodian and the child, if 12 or more years of age, sign written waivers of objection, except that placement changes which were authorized in the dispositional order may be made immediately if notice is given as required in this subsection. In addition, a hearing is not required for placement changes authorized in the dispositional order except where an objection filed by a person who received notice alleges that new information is available which affects the advisability of the court's dispositional order. If a hearing is held under this subsection and the change in placement would remove a child from a foster home, treatment foster home or other placement with a physical custodian described in s. 48.62 (2), the court shall permit the foster parent, treatment foster parent or other physical custodian described in s. 48.62(2) to make a written or oral statement during the hearing or to submit a written statement prior to the hearing, relating to the child and the requested change in placement.

July, with the understanding that Nadia's formal placement would change in August 1996 to her mother. On August 1, 1996, the juvenile court was notified both that the foster parents had not received notice of the petition for change of placement, and that they requested a contested hearing on the change of placement decision.

At a hearing on the matter, the juvenile court acknowledged that there was a procedural defect—the notice to the foster parents was sent to the wrong address—but ruled the foster parents were only entitled to participate in a limited hearing authorized by § 48.357, STATS., not a hearing under § 48.64, STATS. Further, the juvenile court determined that the foster mother's counsel would be allowed to petition for an *in camera* inspection of the juvenile court file. The juvenile court, however, stated that it would decide that issue later.

Sallie T. appealed from that decision to this court. In an unpublished order dated August 26, 1996, this court advised:

> While a foster parent has the right—without any further action on his or her part—to submit a written or oral statement during a change of placement hearing under 48.357, the foster parent may elect to proceed under § 48.64(4)(c), STATS. by petitioning the trial court to do so, as Sallie did here. Under § 48.64, Sallie has greater rights to participate in the change of placement hearing than she would have had under § 48.357.

*Sallie T. v. Circuit Court for Milwaukee County*, Nos. 96–2337-W & 96–2338, unpublished order at 7 (Wis. Ct. App. Aug. 26, 1996) (Wedemeyer, J., one-judge order). This court, however, cautioned that Sallie T. "is

not a 'full party' " although she has "the statutory right to present evidence." *Id.* at 9. With regard to the access of records that Sallie T. had requested, this court's August 26 order remanded the case to the juvenile court with the advisal: "[T]he trial court is best able to determine what access Sallie T. should have in light of her participation in the hearing and it's task of 'determin[ing] the case so as to promote the best interest of the child.' " *Sallie T.,* Nos. 96–2337-W & 96–2338, at 9.

Following the remand, the juvenile court held a hearing on September 3, 1996. At this hearing, the juvenile court misinterpreted this court's August 26 order, thus obligating Sallie T. to again seek the intervention of the court of appeals. In the second unpublished order, this court explained that "the foster parent has a right to *de novo* trial court review of the agency's decision to change placement of the child." *Sallie T. v. Milwaukee County Department of Health & Human Services,* No. 96–2545-LV, unpublished order at 3 (Wis. Ct. App. Sept. 6, 1996) (Wedemeyer, J., one-judge order). Further, this court clarified its earlier ruling with regard to the calling of witnesses, stating that under § 48.64(4)(c), STATS., the foster parent has the right to present "relevant evidence," including the right to present witnesses regarding whether the change in placement is in the child's best interest. *Id.* at 4. On October 8, 9, and 22, 1996, the juvenile court held a hearing on Sallie T.'s objection to the change in placement. The juvenile court refused to allow several of Sallie T.'s witnesses to testify, although it did allow Sallie T. to testify, as well as her husband and Dr. Stephen Emiley. At the conclusion of the hearing, the juvenile court determined that the change of placement to Gloria was in Nadia's best interests.

## II. ANALYSIS.

### A. *"Best Interests of the Child."*

Sallie T.'s arguments turn on the interpretation of § 48.64(4)(c), STATS., which provides:

> The circuit court for the county where the child is placed has jurisdiction upon petition of any interested party over a child who is placed in a foster home, treatment foster home or group home. The circuit court may call a hearing, at which the head of the home and the supervising agency under sub. (2) shall be present, for the purpose of reviewing any decision or order of that agency involving the placement and care of the child. If the child has been placed in a foster home, the foster parent may present relevant evidence at the hearing. *The court shall determine the case so as to promote the best interests of the child.*

(Emphasis added.)

The dispute centers on the meaning of the words "the best interests of the child." During the trial, Sallie T. argued that once a child is removed from the home of the parent and lives with a foster parent for over six months, the legislature intended a definition of "the best interests of the child," similar to that found in custody cases between two parents. *See* § 767.24, STATS. In Sallie T.'s view, in a hearing conducted pursuant to § 48.64(4)(c), STATS., the juvenile court must treat the parties as equals and decide the "best interests of the child" issue on an objective basis. *See* § 767.24(5), STATS. (discussing factors in custody and physical placement determinations).[6] Thus, she envisions the juvenile court giving no special

---

[6] Section 767.24(5), STATS., provides:

703

preference to a biological parent in a biological parent/foster parent custody dispute. When confronted with the competing policies of § 48.355(1), STATS.,[7]

**(5)** FACTORS IN CUSTODY AND PHYSICAL PLACEMENT DETERMINATIONS. In determining legal custody and periods of physical placement, the court shall consider all facts relevant to the best interest of the child. The court may not prefer one potential custodian over the other on the basis of the sex or race of the custodian. The court shall consider reports of appropriate professionals if admitted into evidence when legal custody or physical placement is contested. The court shall consider the following factors in making its determination:

(a) The wishes of the child's parent or parents.

(b) The wishes of the child, which may be communicated by the child or through the child's guardian ad litem or other appropriate professional.

(c) The interaction and interrelationship of the child with his or her parent or parents, siblings, and any other person who may significantly affect the child's best interest.

(d) The child's adjustment to the home, school, religion and community.

(e) The mental and physical health of the parties, the minor children and other persons living in a proposed custodial household.

(f) The availability of public or private child care services.

(g) Whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party.

(h) Whether there is evidence that a party engaged in abuse, as defined in s. 813.122 (1) (a), of the child, as defined in s. 48.02 (2).

(i) Whether there is evidence of interspousal battery as described under s. 940.19 or 940.20 (1m) or domestic abuse as defined in s. 813.12 (1) (a).

(j) Whether either party has or had a significant problem with alcohol or drug abuse.

(k) Such other factors as the court may in each individual case determine to be relevant.

[7] Section 48.355(1), STATS., provides:

**Dispositional orders. (1)** INTENT. In any order under s. 48.345 the judge shall decide on a placement and treatment finding based on evidence submitted to the judge. *The disposition shall employ those means necessary to maintain and protect the child's*

which obligates the court to consider the rights of parents and to strive for family unification, and those of § 48.64(4)(c), which contains the best interests of the child test, Sallie T. argues that § 48.64(4)(c) trumps the considerations listed in § 48.355. Thus, she advocates that the wording "the court shall determine the case so as to promote the best interests of the child" reveals a legislative intent to place the biological parent and a foster parent of over six months duration on a level playing field. She envisions a hearing where the juvenile court decides whether the foster parent or the biological parent can best "parent" the child by looking to the factors utilized in custody disputes, found in § 767.24(5). Moreover, she proposes using the conditions of return embodied in the dispositional order removing Nadia from her mother's care as mere guidelines in deciding whether the change of placement is in the child's best interests. We disagree.

■

The wording of § 48.64(4)(c), must be harmonized with the Children's Code's purpose to preserve "the unity of the family." *See* § 48.01(1), STATS.[8] As the trial

_well-being which are the least restrictive of the rights of the parent or child and which assure the care, treatment or rehabilitation of the child and the family, consistent with the protection of the public. Whenever appropriate, and, in cases of child abuse and neglect, when it is consistent with the child's best interest in terms of physical safety and physical health the family unit shall be preserved and there shall be a policy of transferring custody from the parent only where there is no less drastic alternative._ If there is no less drastic alternative than transferring custody from the parent, the judge shall consider transferring custody to a relative whenever possible.

(Emphasis added.)

[8] Section 48.01(1), STATS., provides:

**Title and legislative purpose. (1)** This chapter may be cited as "The Children's Code". In construing this chapter, the best

court correctly stated: "The entire chapter [of the Children's Code] includes recognizing that the

interests of the child shall always be of paramount consideration. This chapter shall be liberally construed to effectuate the following express legislative purposes:

(a) While recognizing that the paramount goal of this chapter is to protect children, to preserve the unity of the family, whenever appropriate, by strengthening family life through assisting parents, whenever appropriate, in fulfilling their parental responsibilities. The courts and agencies responsible for child welfare should assist parents in changing any circumstances in the home which might harm the child or which may require the child to be placed outside the home. The courts should recognize that they have the authority, in appropriate cases, not to reunite a child with his or her family. The courts and agencies responsible for child welfare should also recognize that instability and impermanence in family relationships are contrary to the welfare of children and should therefore recognize the importance of eliminating the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their return to the family.

(ad) To provide judicial and other procedures through which children and all other interested parties are assured fair hearings and their constitutional and other legal rights are recognized and enforced, while protecting the public safety.

(ag) To recognize that children have certain basic needs which must be provided for, including the need for adequate food, clothing and shelter; the need to be free from physical, sexual or emotional injury or exploitation; the need to develop physically, mentally and emotionally to their potential; and the need for a safe and permanent family. It is further recognized that, under certain circumstances, in order to ensure that the needs of a child, as described in this paragraph, are provided for, the court may determine that it is in the best interests of the child for the child to be removed from his or her parents, consistent with any applicable law relating to the rights of parents.

(bg)1. To ensure that children are protected against the harmful effects resulting from the absence of parents or parent substitutes, from the inability, other than financial inability, of parents or parent substitutes to provide care and protection for their children and from the destructive behavior of parents or parent substitutes in providing care and protection for their children.

paramount goal is to protect children and to preserve unity of the [family] when appropriate." Thus, the best interests of the child standard found in § 48.64(4)(c) needed to be applied in conjunction with the Children's Code's directive that a child's interests are generally best served by being reunited with his or her family if possible. Therefore, the trial court correctly interpreted § 48.64(4)(c), and properly applied the best interests of the child standard.

## B. *Juvenile Court's Exercise of Discretion.*

Sallie T. next argues that the juvenile court erred in exercising its discretion by permitting Nadia to be

2. To ensure that children are provided good substitute parental care in the event of the absence, temporary or permanent inability, other than financial inability, or unfitness of parents to provide care and protection for their children.

(br) To encourage innovative and effective prevention, intervention and treatment approaches, including collaborative community efforts and the use of community-based programs, as significant strategies in planning and implementing legislative, executive and local government policies and programs relating to children and their families and substitute families.

(dm) To divert children from formal proceedings under this chapter to the extent that this is consistent with protection of children and the public safety.

(f) To assure that children pending adoptive homes will be placed in the best homes available and protected from adoption by persons unfit to have responsibility for raising children.

(gg) To promote the adoption of children into stable families rather than allowing children to remain in the impermanence of foster or treatment foster care.

(gr) To allow for the termination of parental rights at the earliest possible time after rehabilitation and reunification efforts are discontinued in accordance with this chapter and termination of parental rights is in the best interest of the child.

(gt) To reaffirm that the duty of a parent to support and maintain his or her child continues during any period in which the child may be removed from the custody of the parent.

returned to her mother. Following the directive of this court's order, the juvenile court used as the starting point in its determination of the best interests of the child under § 48.64(4)(c), STATS., the Department's initial decision to return the child to the mother. This necessitated the court to review the earlier juvenile court orders removing Nadia from her mother's home and to note the conditions placed on Gloria for the return of her children. The juvenile court evaluated Gloria's progress and commented that she had met all the conditions placed on her, including remaining alcohol and drug-free, and participating in therapy. The juvenile court described Gloria's progress as "remarkable."

The juvenile court's analysis was consistent with one of the legislative purposes of the Children's Code—to remove children from their home only under extreme conditions and to either return them when the parent demonstrates that the child has no further need for protection or services, or to terminate their parental rights. Given this legislative background, the juvenile court correctly first assessed the Department's decision and rationale in returning Nadia to her biological mother. Next, the juvenile court heard from Sallie T.'s witnesses. These witnesses attempted to refute the Department's conclusion that Nadia would be best served by her return to her mother. Although the hearing mandated under § 48.64(4)(c), STATS., allows a foster parent to challenge the information relied upon by the Department in changing placement, this challenge has its limitations.

In a § 48.64(4)(c), STATS. hearing, the juvenile court must entertain relevant evidence including testimony, but it need not permit testimony which has no bearing

on the current placement picture. Sallie T. complains that the juvenile court failed to consider Nadia's excellent adjustment and achievements while in her care. As noted, she argues that the juvenile court erred by not comparing her home and her parenting skills with those of Gloria. The juvenile court, resisting Sallie T.'s interpretation, refused to become engaged in a contest between the two households. Instead, the juvenile court concentrated on the dispositional orders and the decision of the Department to return Nadia to her mother. Having previously determined that the interpretation of the "best interests of the child" test found in § 48.64(4)(c) is to be tempered by the overall scheme of the Children's Code, which promotes family unification, the juvenile court was correct in not engaging in this comparison.

Here, the juvenile court looked to the Department's decision and the history of the case. Even after deciding that the conditions of return had been met, the juvenile court did not automatically acquiesce to the Department's decision. Rather, the juvenile court allowed additional relevant evidence relating to Nadia's return to her mother. What the foster parent actually desired was to demonstrate through witnesses that the foster parents were better parents. That may well be, but given the legislative purpose of the Children's Code to preserve the unity of the family, that is not the proper standard as promulgated by the Wisconsin Legislature. As the juvenile court concluded:

> I have considered the entirety of this record through the many proceedings we have had and again, the issue before this court was whether or not the change of placement, which was requested by the State, to return this child back to her mother was an appropriate one.

. . . .

I also heard the guardian ad litem whose position is to recommend to this Court what the guardian ad litem sees is in the best interest of the child . . . [the guardian] would recommend it's in the best interest of the child to return the child to her mother.

. . . .

I have also heard witnesses on behalf of the foster parents.

Based on all the relevant evidence before me and all of the testimony before me, I am not granting the objection to the change of placement and, in fact, am allowing the change of placement to go forward as originally requested and put in place by the State.

Having heard the testimony and considered the entire record, the juvenile court lawfully exercised its discretion.

### C. Conditions of Return.

Next, Sallie T. challenges the juvenile court's determination that Gloria met the conditions of return. We reject her challenges.

Sallie T. posits that Dr. Emiley, testifying at the last hearing on the extension of the dispositional order, had made many recommendations concerning the ultimate reunion of Nadia and her mother and that only one of those recommendations that Sallie T. characterizes as "conditions" had been met. In his earlier testimony, Dr. Emiley cautioned against Nadia being returned to her mother until the Department obtained a psychological evaluation of Gloria, and the family engaged in extensive family therapy. He also felt Nadia's return to Gloria ill-advised until more extensive visitations took place. Despite his testimony,

the actual condition of return contained in the dispositional order referencing Dr. Emiley's recommendations states only: "The mother and Nadia shall undergo a psychological evaluation and follow the recommendations of the evaluator, as determined by the worker"—the Department's social worker assigned to the case. Thus, as the juvenile court properly concluded, the Department, via the social worker, was given great discretion in deciding the future psychological course of treatment for Nadia and Gloria. Testimony at the October 1996 hearing verified that family therapy was currently in place and that the therapist believed the prognosis for the reunited family was good.

■ Regarding Sallie T.'s request to require the Department to complete all of Dr. Emiley's recommendations before changing placement back to the mother, the juvenile court stated: "Therapy is in place. Testimony is that the mother is continuing in therapy. Statement of the G.A.L. is that . . . therapy is progressing well." Later, the juvenile court stated: "I will deny the motion and find that based on the testimony before me, the change of placement, based on what's been presented to me so far, was certainly appropriate and should not be overturned." This court agrees. There is nothing in the record that suggests the current plan is contrary to the best interests of Nadia. The juvenile court properly exercised its discretion.

### D. Relevant Evidence.

■ Finally, Sallie T. urges this court to find that the juvenile court erroneously exercised its discretion by restricting the witnesses she could call at the three-day

October hearing. Section 48.64(4)(c), STATS., provides for the presentation of evidence by the foster parent: "If the child has been placed in a foster home, the foster parent may present relevant evidence." Additionally, in the order dated September 6, 1996, this court instructed the juvenile court that "relevant evidence can include testimony of witnesses." Clearly, the statute permits the foster parent to call witnesses. Whether the juvenile court should have admitted the witnesses' testimony is a discretionary decision. *See, e.g., State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426, 428 (1982). We will not reverse a juvenile court's rulings in this matter absent an erroneous exercise of that discretion. *See id.*

The juvenile court required Sallie T. to present an offer of proof regarding the witnesses she wished to call at the hearing. One of the witnesses Sallie T. wished to call was Nadia's former schoolteacher. The court learned that this teacher had no current information about Nadia because Nadia was enrolled in a different school. The juvenile court properly determined that this witness, who had never met or spoken to Gloria, would be unable to give relevant evidence. *See* RULE 904.02, STATS.[9]

Sallie T. also wished to call a social worker. The sole purpose in calling this witness was to have her testify about Gloria deciding whether or not to terminate her parental rights to Nadia. The juvenile

---

[9] RULE 904.02, STATS., provides:

**Relevant evidence generally admissible; irrelevant evidence inadmissible.** All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

court determined that testimony about Gloria anguishing, months earlier, over whether to terminate her parental rights to Nadia was of little relevance to the issue of whether the Department made the proper decision in returning Nadia to her mother. The court could properly exclude this witness. *See id.*

Finally, Sallie T. wished to have Gloria testify. The trial court determined that Gloria was not properly subpoenaed and, thus, was not obligated to appear or testify. While the trial court mistakenly stated that Sallie T. could not subpoena one of the parties to the action and was limited to testifying herself or presenting written evidence, nonetheless the witnesses proposed by Sallie T. were either not relevant or had not been properly subpoenaed. The trial court did not erroneously exercise its discretion in excluding these other witnesses.

### III. SUMMARY.

In sum, the trial court's findings justify its conclusions that returning Nadia to the home of her mother was in Nadia's best interests. We therefore affirm the order approving the change in placement.

*By the Court.*—Order affirmed.