# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP894 |

| | |
|---|---|
| COMPLETE TITLE: | In re the termination of parental rights to T. L. E.-C., a person under the age of 18:<br><br>Eau Claire County Department of Human Services,      Petitioner-Respondent,    v.<br>S. E.,      Respondent-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 392 Wis. 2d 726,946 N.W.2d 155
PDC No:2020 WI App 39 - Published

| | |
|---|---|
| OPINION FILED: | June 10, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 25, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Eau Claire |
| JUDGE: | Emily Long |

| | |
|---|---|
| JUSTICES: | |

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in Which ZIEGLER, C.J., ROGGENSACK, and HAGEDORN, JJ., joined. DALLET, J., filed a dissenting opinion in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the respondent-appellant-petitioner, there were briefs filed by *Thomas B. Aquino*, assistant state public defender. There was an oral argument by *Thomas B. Aquino*.

For the petitioner-respondent, there was a brief filed by *Sharon L.G. McIlquham*, assistant corporation counsel. There was an oral argument by *Sharon L.G. McIlquham*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP894
(L.C. No. 2018TP10)

STATE OF WISCONSIN　　　　　　　：　　　IN SUPREME COURT

**In re the termination of parental rights to T.L.E.-C., a person under the age of 18:**

**Eau Claire County Department of Human Services,**

　　　　　**Petitioner-Respondent,**

　　**v.**

**S.E.,**

　　　　　**Respondent-Appellant-Petitioner.**

**FILED**

**JUN 10, 2021**

Sheila T. Reiff
Clerk of Supreme Court

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, and HAGEDORN, JJ., joined. DALLET, J., filed a dissenting opinion in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA GRASSL BRADLEY, J. If a circuit court determines a child is in need of protection or services (CHIPS) due to a parent's neglect, refusal, or inability (for reasons other than poverty) to provide necessary care to the extent that the physical health of the child is seriously endangered, the circuit court may order the child removed from the parental home. Wis.

Stat. §§ 48.13, 48.345 (2017-18).[1]  Wisconsin law declares that "instability and impermanence in family relationships are contrary to the welfare of children" and recognizes "the importance of eliminating the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their safe return to the family."  Wis. Stat. § 48.01(1)(a) (emphases added).  Toward that end, Wisconsin law allows the filing of a petition to terminate parental rights if the child has remained in out-of-home care for at least six months.  Wis. Stat. § 48.415(2)(a)3.

¶2  Although "the paramount goal" of Chapter 48 of the Wisconsin Statutes "is to protect children and unborn children," the Children's Code also aims "to preserve the unity of the family, whenever appropriate, by strengthening family life through assisting parents and the expectant mothers of unborn children, whenever appropriate, in fulfilling their responsibilities as parents or expectant mothers."  Wis. Stat. § 48.01(1)(a).  In achieving that objective, the statutes task "[t]he courts and agencies responsible for child welfare, while assuring that a child's health and safety are the paramount concerns," with "assist[ing] parents and the expectant mothers of unborn children in changing any circumstances in the home which might harm the child or unborn child, which may require the child to be placed outside the home or which may require the expectant mother to be

---

[1] Unless otherwise indicated, all references to the Wisconsin Statutes are to the 2017-18 version.

taken into custody." Id. Conditions with which the parent must comply in order to have her child returned to her care must be set forth in the CHIPS dispositional order. Wis. Stat. § 48.355(2)(b)7. Should these efforts fail to change the circumstances which led to the removal of the child from the parental home, Wisconsin law requires a petition for termination of parental rights (TPR) to be filed once the child has been placed outside of his home for 15 of the most recent 22 months. Wis. Stat. §§ 48.415(2)(a)3, 48.417(1)(a). This mandate codifies federal law, specifically the Adoption and Safe Families Act (ASFA). Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, 111 Stat. 2115.[2]

¶3 In 2018, the legislature amended Wis. Stat. § 48.415(2)(a)3, a portion of the continuing CHIPS ground for the involuntary termination of parental rights. This statutory amendment occurred during the pendency of Sophie's court proceedings involving her child, Tyler, who was removed from Sophie's home and adjudged CHIPS in 2016.[3] Sophie's CHIPS case commenced under the 2016 version of the statute, and two months after the 2018 statutory amendment, the Eau Claire Department of Human Services (the Department) filed a petition to terminate Sophie's parental rights. The amended version of § 48.415(2)(a)3,

---

[2] The Adoption and Safe Families Act is codified in non-contiguous sections in Title 42 of the United States Code.

[3] For ease of reading, we use the pseudonym "Sophie" for S.E. (the mother) and "Tyler" for T.L.E.-C. (the child).

3

among other things, eliminated consideration by the factfinder of the likelihood the parent would meet the conditions for return of the child to the parent's home if the child had already been placed outside the parent's home for at least "15 of the most recent 22 months."[4] Sophie challenged the applicability of the amended version of § 48.415(2)(a)3 during her TPR proceedings. The circuit court decided the new version applied.[5] The court of appeals agreed with the circuit court.[6]

¶4 Sophie raises two issues: (1) whether as a matter of statutory construction, the "15 out of 22 months" timeframe began to run only after Sophie received written notice of the amended version of Wis. Stat. § 48.415(2)(a)3 (2017-18); and (2) whether starting the "15 out of 22 months" timeframe in 2016 when Sophie received the initial CHIPS order with written notice referencing the prior version of § 48.415(2)(a)3 (2015-16) violates her due process rights.

¶5 We hold: (1) the "15 out of 22 months" timeframe, as codified in the 2018 amended version of Wis. Stat. § 48.415(2)(a)3 (2017-18), began to run when Sophie received written notice accompanying the initial 2016 CHIPS order; and (2) starting the "15 out of 22 months" timeframe in 2016 does not violate Sophie's

---

[4] For brevity, we refer to the amended language in Wis. Stat. § 48.415(2)(a)3 (2017-18) as the "15 out of 22 months" timeframe.

[5] The Honorable Judge Emily M. Long, Eau Claire County Circuit Court, presided.

[6] Eau Claire Cnty. DHS v. S.E., 2020 WI App 39, 392 Wis. 2d 726, 946 N.W.2d 155.

4

due process rights. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶6 In May 2016, the Department received a report of a three-year-old child, Tyler, wandering unattended on a campground with a full diaper. Tyler's mother, Sophie, was on a probation hold at the time for methamphetamine possession. In June 2016, the Department removed Tyler from Sophie's care and placed him in a foster home. When the Department conducted a drug test on Tyler, he tested positive for methamphetamine. Tyler's foster parents observed that he showed significant signs of neglect. In August 2016, the circuit court found Tyler to be a child in need of protection or services.

¶7 Under that initial CHIPS order, the circuit court provided Sophie with written notice of the potential grounds for termination of Sophie's parental rights to Tyler, as required by Wis. Stat. § 48.356(2). Both parties agree that the written notice identified continuing CHIPS as a possible ground for termination.[7] The notice referenced the three sub-parts of continuing CHIPS that existed in the 2016 version of Wis. Stat. § 48.415(2)(a) (2015-16). At that time, the third sub-part provided that, in order to

---

[7] The appellate record does not include the initial CHIPS order from August 2016. Nonetheless, both parties agree that the order contained written notice of the TPR warnings as required by Wis. Stat. § 48.356(2). The parties further agree that the notice listed "continuing CHIPS" among potential grounds for termination of parental rights and referenced the prior version of Wis. Stat. § 48.415(2)(a)3 (2015-16).

terminate parental rights under the continuing CHIPS ground for termination of parental rights, the factfinder at a TPR trial would need to determine that there was a "substantial likelihood" the parent would not meet the conditions established for the safe return of the child to the home within the nine-month period following the date of trial. § 48.415(2)(a)3 (2015-16). At the initial hearing and at four subsequent court hearings, the circuit court gave Sophie written and oral notice that her parental rights could be terminated due to continuing CHIPS.

¶8 During the two years following Sophie's initial CHIPS order, Sophie continued her drug use and was arrested on numerous occasions for drug possession. She also absconded from probation and refused to participate in the court-ordered services offered by the Department that would have aided Sophie in meeting the conditions for reunification with Tyler. According to the Department, Sophie has not seen Tyler in person since October 2016.

¶9 In April 2018, the legislature amended the third sub-part of the continuing CHIPS statute. See 2017 Wis. Act 256, § 1; Wis. Stat. § 48.415(2)(a)3 (2017-18). The amended version, among other things, eliminated any prospective consideration of the likelihood the parent would meet the conditions for the safe return of the child to the home if the child had already been placed outside the parent's home for at least "15 of the most recent 22 months."

¶10 In June 2018, the Department filed a petition to terminate Sophie's parental rights to Tyler. The petition cited abandonment as the ground for termination. In September 2018, the

Department amended its petition to add continuing CHIPS as a ground for termination. During the pendency of Sophie's TPR proceedings, in October 2018 the circuit court entered another CHIPS order; this time, when the circuit court identified continuing CHIPS as a potential ground for termination of Sophie's parental rights to Tyler, the written notice referenced the amended version of Wis. Stat. § 48.415(2)(a)3 (2017-18).[8]

¶11 In April 2019, prior to a trial in the grounds phase of Sophie's TPR proceedings,[9] the parties disputed whether the 2016 version or the 2018 amended version of Wis. Stat. § 48.415(2)(a)3 should apply to Sophie's case. While Sophie contended the prior version applied, the Department and Tyler's guardian ad litem

---

[8] The appellate record does not contain the October 2018 CHIPS order. However, the parties agree that the order contained TPR warnings as required by Wis. Stat. § 48.356(2). The parties further agree that the order identified continuing CHIPS as a potential ground for termination and referenced the amended version of Wis. Stat. § 48.415(2)(a)3 (2017-18).

[9] As background, "[t]ermination of parental rights proceedings involve a two-step process." Tammy W-G v. Jacob T., 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854. The first step involves a factfinding hearing. Id. "The purpose of the fact-finding hearing is to determine . . . whether grounds exist for the termination of parental rights" in contested cases. Wis. Stat. § 48.424(1). "The focus of this step is whether the § 48.415 ground has been met, not the child's best interest." Tammy W-G, 333 Wis. 2d 273, ¶18.

"The second-step, the dispositional hearing, occurs only after the factfinder finds a Wis. Stat. § 48.415 ground has been proved and the [circuit] court has made a finding of unfitness." Id., ¶19 (citation omitted). "In this step, the best interest of the child is the 'prevailing factor.' If the [circuit] court finds a termination of parental rights is in the child's best interest, termination should be ordered." Id. (citations omitted).

7

asserted the 2018 amended version applied. In May 2019, the circuit court ruled that the amended version applied, noting:

> [Sophie] had the current warnings, the warnings that would be for the current law on multiple occasions with significant time to adjust to those warnings, that this has been going on for quite some time with those new updated warnings being given.
>
> Given the purpose of the statute, given the stated, intended, desired outcome – that is permanence of the child – I am going to find that the new law will apply in this case.

The circuit court also concluded that the "15 out of 22 months" timeframe began to run in 2016 when Sophie received the initial CHIPS order and written notice.

¶12 The circuit court adjourned the TPR trial to allow Sophie to appeal the non-final order to the court of appeals. The court of appeals granted Sophie's petition for interlocutory appeal and affirmed the circuit court's ruling. We granted Sophie's petition for review.

## II. STANDARD OF REVIEW

¶13 Sophie first contends that, as a matter of statutory construction, the "15 out of 22 months" timeframe began to run only after Sophie received written notice of the amended version of Wis. Stat. § 48.415(2)(a) (2017-18). Resolving this issue requires us to interpret Wisconsin's statutes. The interpretation and application of statutes present questions of law that we review independently, benefitting from the analyses of the circuit court and court of appeals. State v. Stephenson, 2020 WI 92, ¶18, 394

Wis. 2d 703, 951 N.W.2d 819 (internal quotations and citations omitted).

¶14 Sophie also argues that starting the "15 out of 22 months" timeframe in 2016 when Sophie received the initial CHIPS order and written notice referencing the prior version of Wis. Stat. § 48.415(2)(a) (2015-16) violates her due process rights. Whether a statute or its application violates an individual's constitutional rights is a question of law this court also reviews independently, benefitting from the analyses of the circuit court and court of appeals. See State v. Smith, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90; Dane Cnty. DHS v. J.R., 2020 WI App 5, ¶51, 390 Wis. 2d 326, 938 N.W.2d 614.

### III. DISCUSSION

#### A. CHIPS Orders and Relevant Statutes

¶15 We begin with an overview of CHIPS orders and the relevant statutes governing them. As a general matter, when a child is adjudicated CHIPS and removed from the parental home, the Wisconsin Statutes require the circuit court to orally inform the parent of any grounds for termination of parental rights which may be applicable to the parent, and to provide this information in a written CHIPS order as well. Specifically, Wis. Stat. § 48.356 contains two provisions: "subsection (1) sets forth the required oral warnings and subsection (2) sets forth the required written warnings." St. Croix Cnty. DHS v. Michael D., 2016 WI 35, ¶16, 368 Wis. 2d 170, 880 N.W.2d 107. "Only subsection (2) is referenced in the TPR based on continuing CHIPS statute." Id.; see Wis. Stat. § 48.415(2)(a)1 (mandating that orders must

9

"contain[] the notice required by s. 48.356(2)"). In relevant part, Wis. Stat. § 48.356 reads:

> (1) Whenever the court orders a child to be placed outside his or her home, . . . <u>the court shall orally inform the parent</u> or parents who appear in court . . . <u>of any grounds for termination of parental rights under s. 48.415 which may be applicable</u> and of the conditions necessary for the child . . . to be returned to the home . . . .
>
> (2) In addition to the notice required under sub. (1), any written order which places a child . . . outside the home . . . shall notify the parent or parents . . . of the information specified under sub. (1).

(Emphases added.)

¶16 The CHIPS dispositional order shall also list conditions the parent must meet in order for the child to be returned to the parental home. Wis. Stat. § 48.356(2).[10] Additionally, the standard form order contains a "Notice Concerning Grounds to Terminate Parental Rights" listing 12 potential grounds for termination of parental rights, which correspond to the "grounds for involuntary termination of parental rights" enumerated in Wis. Stat. § 48.415.[11] The form order details the evidence necessary

---

[10] A current version of the standard form dispositional order can be accessed at the following link: https://www.wicourts.gov/formdisplay/JC-1611T.pdf?formNumber=JC-1611T&formType=Form&formatId=2&language=en.

[11] Technically, the standard form dispositional order lists 13 separate grounds for termination of parental rights because the form identifies "continuing CHIPS of an unborn child" as a separate ground. Wisconsin Stat. § 48.415 embeds continuing CHIPS of an unborn child within the continuing CHIPS ground for involuntary termination of parental rights, as one of 12 statutory grounds.

to establish each ground for termination. Boxes precede each ground, and if different circumstances may establish a particular ground, boxes precede each array of evidence that is independently sufficient to prove that ground. The form contemplates that the circuit court will place a checkmark next to those grounds which "may be most applicable to [the parent]." The circuit court must provide the parent with a copy of the order, including TPR warnings. Wis. Stat. §§ 48.355(2)(d), 48.356(2).

¶17 The ground for termination of parental rights at issue in this case is continuing CHIPS, as set forth in Wis. Stat. § 48.415(2)(a).[12] In the grounds phase of a TPR proceeding based on continuing CHIPS, the factfinder must determine that the following three sub-parts of the continuing CHIPS ground have been proven:

> 1. [The] child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.347, 48.357, 48.363, 48.365, 938.345, 938.357, 938.363 or 938.365 containing the notice required by s. 48.356(2) or 938.356(2).
>
> . . . .
>
> 2.b. [The] agency responsible for the care of the child and the family or of the unborn child and expectant mother has made a reasonable effort to provide the services ordered by the court.
>
> 3. [The] child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1., not including time

---

[12] Continuing CHIPS may also be established under Wis. Stat. § 48.415(2)(am), which is not at issue in this case.

spent outside the home as an unborn child; . . . the parent has failed to meet the conditions established for the safe return of the child to the home; and, if the child has been placed outside the home <u>for less than 15 of the most recent 22 months</u>, . . . there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home <u>for 15 of the most recent 22 months</u>, not including any period during which the child was a runaway from the out-of-home placement or was residing in a trial reunification home.

§ 48.415(2)(a) (2017-18) (emphases added).

¶18 Previously, the third sub-part read:

[The] child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders not including time spent outside the home as an unborn child; and . . . the parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions <u>within the 9-month period following the fact-finding hearing</u> under s. 48.424.

Wis. Stat. § 48.415(2)(a)3 (2015-16) (emphasis added). This prior version of the statute required the factfinder to look forward nine months from the date of the TPR factfinding hearing to determine whether the parent had a "substantial likelihood" of meeting the conditions established for the safe return of her child. Regardless of how much time the child had spent outside of the parent's home, the factfinder would look forward nine months from the date of the hearing——even if years had passed without the parent satisfying the court-ordered conditions for the safe return of the child to the parental home.

¶19 In April 2018, the legislature amended this language, reconfiguring the timeframe within which the factfinder may

12

consider the likelihood of the parent meeting the court-ordered conditions. See 2017 Wis. Act 256, § 1. The legislature replaced the forward-looking nine-month period with a "15 of the most recent 22 months" timeframe. Only if the child has been placed outside the home for less than 15 of the most recent 22 months may the factfinder consider whether there "is a substantial likelihood that the parent will not meet [the] conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months." If the child has been placed outside the home for more than 15 of the most recent 22 months, the third subpart is satisfied by evidence proving that the parent failed to meet the conditions established for the safe return of the child. Through this statutory amendment, the legislature eliminated the petitioner's obligation to show a substantial likelihood that the parent will not meet the conditions of return within the nine months following the factfinding hearing if the child has been in out-of-home care for more than 15 months. This amendment aligns with Wis. Stat. § 48.417(1)(a), which requires entities like the Department to file a TPR action for any child who "has been placed outside of his or her home . . . for 15 of the most recent 22 months."

## B.   Statutory Construction

¶20   Sophie's CHIPS case straddled this amendment to the TPR statute, although her TPR case was filed after the amendment. Sophie argues that the "15 out of 22 months" timeframe began to run only after Sophie received written notice of the amended version of Wis. Stat. § 48.415(2)(a)3 (2017-18). We disagree.

13

¶21 Wisconsin Stat. §§ 48.356(1) and (2) require circuit courts to provide parents with oral and written notice, respectively, of any "grounds for termination of parental rights under s. 48.415 which may be applicable." (Emphasis added.) Proving continuing CHIPS at a TPR trial requires establishing the parent received such notice; the first sub-part of Wis. Stat. § 48.415(2)(a) requires proof that the "child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders . . . containing the notice required by § 48.356(2)." § 48.415(2)(a)1 (emphasis added).

¶22 Contrary to the court of appeals' rationale in this case, providing notice to the parent of potential grounds for TPR means more than just reciting "abandonment" or "continuing need of protection or services" or any of the other 10 grounds for TPR. Without more explanation, the parent would be left guessing what a particular ground means or how the petitioner could prove it. A ground for TPR necessarily encompasses the sub-parts comprising that ground. See Ground, Black's Law Dictionary (11th ed. 2019) ("[t]he reason or point that something (as a legal claim or argument) relies on for validity."). Indeed, a notification that parental rights can be terminated for continuing CHIPS conveys little in the absence of the three sub-parts that comprise continuing CHIPS. Without the three sub-parts, parents would have no understanding of the reasons they may lose their parental rights.

14

¶23 In Chapter 48, the legislature expressed one of the purposes of the Children's Code as "assisting parents . . . in fulfilling their responsibilities as parents." Wis. Stat. § 48.01(1)(a). Most reasonably, assisting parents in fulfilling the conditions for the safe return of their children requires providing them with notice of the particular circumstances under which a CHIPS adjudication may result in the termination of their parental rights. See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶¶48-49, 271 Wis. 2d 633, 681 N.W.2d 110 ("Some statutes contain explicit statements of legislative purpose," which are "perfectly relevant to a plain-meaning interpretation[.]"). In order to fulfill this purpose of the Children's Code, circuit courts must apprise parents of the circumstances that may trigger a termination of parental rights. The standard form dispositional order reflects this.[13]

¶24 While notification "of any grounds for termination of parental rights" necessarily includes the statutory sub-parts comprising each ground, circuit courts must provide notice of only those grounds which "may be applicable" at the time the order is entered. Wis. Stat. § 48.356(1) (emphasis added). This phrase is dispositive of Sophie's case. The phrase "may be" in this context most reasonably means "to be a possibility." May, Black's Law Dictionary (11th ed. 2019). At the time a circuit court places a child outside the home or continues the child's out-of-home placement, the circuit court must give the parent notice of the

---

[13] See footnote 10 supra.

15

grounds that may form the basis for a future TPR hearing——at the particular time the notice is given. See, e.g., Dane Cnty. v. Kelly M., 2011 WI App 69, ¶24, 333 Wis. 2d 719, 798 N.W.2d 697 ("[T]he common meaning of 'may be provided' . . . does not mean 'is being provided' but instead means something that might happen in the future.") (emphasis added). Of course, the circuit court cannot foresee all grounds that may be asserted in a TPR petition in the future. For example, the parent of a child adjudicated CHIPS may later abandon the child within the meaning of Wis. Stat. § 48.415(1)(a)2 by failing to visit or communicate with the child for three months or longer after the child was placed outside the home by court order, as the Department alleges Sophie has done. The parent would not have received an explicit warning that her parental rights could be terminated under that ground but that does not mean abandonment could not form the basis for a TPR proceeding against her.

¶25 Indeed, the statute does not say that circuit courts must provide notice of grounds which will be applicable; this would assign the circuit courts an impossible task. When a circuit court removes a child from the parental home or continues a child's out-of-home placement, the legislature requires the circuit court to provide notice of TPR grounds that may be applicable in the future, and such notice is a prerequisite to the initiation of TPR proceedings. "We are not at liberty to disregard the plain words of the statute and we will not attempt to improve the statute by adding words not chosen by the legislature." Michael D., 368 Wis. 2d 170, ¶17.

16

¶26 Sophie argues that in order for the Department to initiate TPR proceedings against her based on the amended continuing CHIPS grounds, she would first need to receive TPR warnings, in her CHIPS proceedings, reflecting the amended statutory grounds. We disagree. In August 2016, after the circuit court found Tyler to be a child in need of protection or services, Sophie received written notice that she could lose her parental rights. The notice identified both the TPR ground "which may be applicable" to Sophie——continuing CHIPS——and its three applicable sub-parts. Sophie's initial CHIPS order referenced the prior version of Wis. Stat. § 48.415(2)(a)3 (2015-16), because that was the version in effect at the time the circuit court gave Sophie the TPR warnings. The CHIPS statute, Wis. Stat. § 48.356, requires only that Sophie receive notice of those TPR grounds "which may be applicable" to her and that is, in fact, the notice she received. Accordingly, the first sub-part of the continuing CHIPS ground for terminating Sophie's parental rights was satisfied because the CHIPS orders "contain[ed] the notice required by s. 48.356(2)" as mandated by § 48.415(2)(a)1.

¶27 It is of no import that the legislature amended the third sub-part of continuing CHIPS in 2018 because there is no dispute that each time Sophie received TPR warnings, the circuit court orders contained the requisite notice under Wis. Stat. § 48.356(2)——namely, any grounds for termination of parental rights "which may be applicable" to Sophie at the time the warnings were given. Moreover, the statutorily-required warnings contemplate that different grounds may form the basis for a TPR

17

action and the parent is forewarned of this. Sophie's notice needed to identify only the grounds for termination that existed at the time of the initial CHIPS order. Sophie's notice did just that: it included all three sub-parts of continuing CHIPS in effect in 2016——the grounds for termination of her parental rights "which may be applicable" in a future TPR proceeding. The dispositional order underscores the potential for different grounds supporting a future TPR proceeding by cautioning the parent to "be aware that if any of the other[] [grounds] exist now or in the future, your parental rights can be taken from you." Accordingly, Sophie was put on notice that different grounds could support a TPR action against her.

¶28 This application of Wis. Stat. § 48.356 fully comports with our precedent explaining the textual purpose of providing parents with such notice. As this court stated in Stephen H., "[t]he notice required by Wis. Stat. §§ 48.356(2) and 48.415(2) is meant to ensure that a parent has adequate notice of the conditions with which the parents must comply for a child to be returned to the home. The notice is also meant to forewarn parents that their parental rights are in jeopardy." Waukesha Cnty. v. Steven H., 2000 WI 28, ¶37, 233 Wis. 2d 344, 607 N.W.2d 607 (modified on other grounds by Michael D., 368 Wis. 2d 170). Sophie's notices complied with all statutory mandates, explained the conditions for the safe return of Tyler to her home, and forewarned Sophie that her parental rights were in jeopardy. The circuit court properly applied the statutory language in effect at the time TPR proceedings commenced. Because Tyler had been placed outside of

18

Sophie's home for more than "15 of the most recent 22 months" at the time the TPR petition was filed, the Department was not required to establish a substantial likelihood that Sophie would not in the future meet the conditions established for the safe return of Tyler to her home. At that point, Tyler had been placed outside of Sophie's home beyond the period of time that both Wisconsin law (and federal law) require the state to achieve permanency for him.

¶29 The textually-expressed purposes of the Children's Code support our conclusion. In Wis. Stat. § 48.01(1) the legislature commands that the interests of the child shall be "paramount" in interpreting the Children's Code: "In construing [Chapter 48], the best interests of the child or unborn child shall always be of paramount consideration. This chapter shall be liberally construed to effectuate the following express legislative purposes:

> (a) The courts and agencies responsible for child welfare should also recognize that <u>instability and impermanence</u> in family relationships are <u>contrary to the welfare of children</u> and should therefore recognize the importance of <u>eliminating the need for children to wait unreasonable periods of time</u> for their parents to correct the conditions that prevent their safe return to the family.
>
> . . . .
>
> (gr) To allow for the termination of parental rights <u>at the earliest possible time</u> after rehabilitation and reunification efforts are discontinued in accordance with this chapter and termination of parental rights is in the best interest of the child."

(Emphases added.) Tyler has been out of Sophie's care for nearly five years. During that period of time, Sophie has remained apprised of the conditions she must meet in order to have Tyler returned to her home, which the circuit court communicated to her beginning in August 2016. She has failed to satisfy them, despite being on notice that her parental rights could be terminated as early as six months after Tyler's out-of-home placement. Nearly three years have passed since Sophie received TPR warnings reflecting the amended continuing CHIPS ground. Wisconsin law requires the Department to file a TPR petition if a child like Tyler has been placed outside of the parental home for 15 of the most recent 22 months. Wis. Stat. § 48.417(1)(a).

¶30 Accepting Sophie's argument would require us to disregard the fact that Tyler's out-of-home placement extended well beyond 15 of the most recent 22 months preceding the filing of the TPR petition. Wisconsin Statutes preclude us from doing so. Under Wisconsin law, such instability and impermanence is contrary to Tyler's welfare. Wis. Stat. § 48.01(1). For this reason, both Wisconsin law as well as federal law require the commencement of TPR proceedings once a child has spent 15 months in out-of-home care. Wis. Stat. § 48.417(1)(a); 42 U.S.C. § 675(5)(E). Sophie's interpretation of the statutes would defeat the permanence mandate for children like Tyler who have spent more than 15 months outside the parental home. This is contrary to the harmonious-reading canon, which instructs that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." Antonin Scalia & Bryan A. Garner,

20

Reading Law: The Interpretation of Legal Texts 180 (2012); State v. Hemp, 2014 WI 129, ¶29, 359 Wis. 2d 320, 856 N.W.2d 811 (applying the harmonious-reading canon). The statutory provisions we construe exist in harmony. Sophie received the statutorily-required notice of a potential TPR both before and after the 2018 amendment. Her desire for even more than the nearly five years she has had to meet the conditions for the return of Tyler to her care is simply not compatible with the statutory mandate to achieve permanence for her son.

## C. Due Process

¶31 Sophie next argues that starting the "15 out of 22 months" timeframe in 2016 when Sophie received the initial CHIPS order and written notice referencing the prior version of Wis. Stat. § 48.415(2)(a)3 (2015-16) violates her due process rights. Sophie contends that starting the "15 out of 22 month" timeframe based on a CHIPS order pre-dating the legislature's amendment to the third sub-part of continuing CHIPS would constitute an impermissible retroactive application of § 48.415(2)(a) (2017-18).[14] Additionally, Sophie maintains that applying the amended

---

[14] Although Sophie raises retroactivity as part of her statutory construction argument, retroactivity is better suited for a due process analysis. At least in part, "[t]he antiretroactivity principle finds expression [in the Due Process Clause]." Landgraf v. USI Film Prod., 511 U.S. 244, 266 (1994). As the United States Supreme Court has noted, "[t]he Due Process Clause . . . protects the interests in fair notice and repose that may be compromised by retroactive legislation." Id. Accordingly, we address Sophie's retroactivity argument as part of her due process claim. See Dane Cnty. DHS v. J.R., 2020 WI App 5, ¶28, 390 Wis. 2d 326, 938 N.W.2d 614 (addressing a retroactivity argument as part of the petitioner's due process claim).

version of § 48.415(2)(a) (2017-18) would deprive her of her constitutionally protected right to parent her child, without "fair notice." We disagree with Sophie on both arguments.

### 1. Retroactive Application

¶32 "As a general rule, legislation is presumed to apply prospectively unless the statutory language reveals, by express language or necessary implication, an intent that it apply retroactively." Schulz v. Ystad, 155 Wis. 2d 574, 597, 456 N.W.2d 312 (1990) (citation omitted). This presumption is rooted in the "[s]trong common-law tradition" that "the legislature's primary function [is] declaring law to regulate future behavior." Id. However, as the United States Supreme Court has held, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." Landgraf v. USI Film Prod., 511 U.S. 244, 269 (1994). "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 269-70.

¶33 In accordance with the United States Supreme Court's instruction, we apply a two-step analysis to determine whether applying the amended version of a statute constitutes a retroactive application. Matthies v. Positive Safety Mfg. Co., 2001 WI 82, ¶¶16, 19, 244 Wis. 2d 720, 628 N.W.2d 842; J.R., 390 Wis. 2d 326, ¶30. "In the first step, we look to whether the legislature has expressly noted its intent that the statute be applied retroactively." J.R., 390 Wis. 2d 326, ¶31. In the second step, we determine "whether the amended version of [the

22

statute] . . . has a retroactive effect when applied." Id., ¶32. In this case, our analysis of both steps shows that Wis. Stat. § 48.415(2)(a) (2017-18) is not being applied retroactively to Sophie.

¶34 First, as Wisconsin courts have already stated, "the legislature did not express its intent that the amended version of Wis. Stat. § 48.415(2)(a) be applied retroactively." Id., ¶31. Nowhere in the legislature's amendment to the third sub-part——or anywhere else in § 48.415 for that matter——did it explicitly signal that the statute applies retroactively.

¶35 Second, application of the amended statute has no retroactive effect as applied to Sophie's case. Sophie argues that applying the amended version of Wis. Stat. § 48.415(2)(a) (2017-18) has "retroactive effect" because it "attaches new legal consequences to events completed before its enactment."[15] Landgraf, 511 U.S. at 269-70. While it is true that a statute may have retroactive effect if it "creates a new obligation" or "imposes a new duty" with respect to past conduct, application of § 48.415(2)(a)3 (2017-18) to Sophie's case does neither. State v. Chrysler Outboard Corp., 219 Wis. 2d 130, 172, 580 N.W.2d 203 (1998) (quoted source omitted). The "15 out of 22 months" timeframe did not create any new legal obligation or consequence. Regardless of the legislature's amendment, Sophie remained subject

---

[15] Unlike her argument before the court of appeals, Sophie makes clear that she is not asserting a "vested rights" theory of retroactivity. See Lands' End, Inc. v. City of Dodgeville, 2016 WI 64, ¶65 n.30, 370 Wis. 2d 500, 881 N.W.2d 702. Accordingly, we need not address that argument.

23

to the exact same conditions in 2018 as she was in 2016. Nothing in the amended statute changed the conditions established for the safe return of Tyler to her care. The amendment itself did not create or alter any legal consequence affecting Sophie; her parental rights were in jeopardy before and after the statutory amendment solely because she failed to meet the court-ordered conditions for the return of Tyler to her home.

¶36 As applied to Sophie, the legislature's only amendment to the statute eliminated the factfinder's consideration of the nine-month period following a factfinding hearing in a TPR proceeding involving a child who remained in out-of-home care for 15 of the most recent 22 months preceding the hearing. Sophie's responsibilities under the CHIPS dispositional order remained the same, and her failure to meet her court-ordered conditions exposed her to the same legal consequence: the filing of a TPR petition as soon as Tyler spent six months in out-of-home care. Wis. Stat. § 48.415(2)(a)3. Indeed, the statutory amendment left unchanged the Department's obligation to file a TPR petition once Tyler spent 15 months in out-of-home care. In other words, both before and after the amendment, Sophie was on notice that: (1) her parental rights were at risk if she failed to meet the conditions established for Tyler's safe return to her home, and (2) the Department was legally obligated to file a TPR petition should she fail to meet those conditions within 15 months of Tyler's out-of-home placement.

24

## 2. "Fair Notice"

¶37 Lastly, Sophie asserts that her due process rights were violated because she was deprived of her constitutionally protected right to parent her child, without "fair notice." In making this argument, Sophie relies on one case: State v. Patricia A.P., 195 Wis. 2d 855, 537 N.W.2d 47 (Ct. App. 1995). According to Sophie, Patricia A.P. established a due process violation any time a court terminates parental rights for conduct different than the conduct described in the notice. Sophie's characterization of Patricia A.P. is inaccurate.

¶38 In Patricia A.P., the court of appeals reversed an order terminating Patricia's parental rights to her son, concluding that the State violated her due process rights when "the notice of the grounds for termination she received" substantially differed from "the grounds the State employed to terminate her rights." Id. at 857-58. The prior version of Wis. Stat. § 48.415(2)——the one for which Patricia received noticed——required proof that "the parent has substantially neglected, willfully refused or been unable to meet the conditions established for the return of the child to the home." Id. at 859. The amended version of the statute——the one the State used to terminate Patricia's parental rights——instead required proof that "the parent has failed to demonstrate substantial progress towards meeting the conditions established for the return of the child to the home." Id. at 860. Due to the substantial differences between the two versions, the court of appeals held that Patricia's due process rights were violated. In relevant part, the court of appeals stated that "when the State

warns a parent that his or her rights to a child may be lost because of the parent's future conduct, if the State substantially changes the type of conduct that may lead to the loss of rights without notice to the parent, the State applies a fundamentally unfair procedure." Id. at 863 (emphasis added). The court of appeals further held that, in Patricia's case, the change in the statute was "not merely a matter of degree. It [was] a change in quality of the very nature of the acts leading to termination." Id. at 864 (emphases added).

¶39 The change made to Wis. Stat. § 48.415(2)(a)3 in Sophie's case differs from the statutory change in Patricia A.P. Unlike in Patricia A.P., the 2018 statutory amendment at issue in Sophie's case neither "substantially changed" nor altered "[the] quality of" the type of conduct leading to termination of parental rights. Id. at 863-64. In fact, the 2018 amendment to § 48.415(2)(a)3 had nothing to do with past parental conduct. As already explained, the legislature's amendment aligned Wisconsin law with federal law under ASFA with respect to children who have been placed outside the home for more than 15 of the most recent 22 months. In such cases, the petitioner seeking to terminate parental rights must prove that the parent failed to meet the conditions established for the safe return of the child, but need not show a substantial likelihood that the parent will not meet the conditions of return in the future——specifically, within the nine months following the factfinding hearing. Under both the prior and amended versions of the statute, the past conduct of the parent triggering the TPR petition remains the same: the parent

26

has failed to meet the conditions established for the safe return of the child to the home.

¶40 In Patricia A.P., that was simply not the case. In that case, the legislature had removed all language pertaining to a parent's "culpable conduct," removing any showing of "neglect, willfulness, or inability" of the parent. Id. at 864. In light of the substantive differences between the legislative changes at issue in Patricia A.P. and the legislature's 2018 amendment to Wis. Stat. § 48.415(2)(a)3 (2017-18) at issue in this case, Patricia A.P. has no bearing on Sophie's case. Both before and after the 2018 amendment, Sophie received fair notice of the potential deprivation of her constitutionally protected right to parent her child, based on her failure to meet the court-ordered conditions for the safe return of Tyler to her home.

## IV. CONCLUSION

¶41 We hold: (1) the "15 out of 22 months" timeframe, as codified in the 2018 amended version of Wis. Stat. § 48.415(2)(a)3 (2017-18), began to run when Sophie received written notice accompanying the initial 2016 CHIPS order; and (2) starting the "15 out of 22 months" timeframe in 2016 did not violate Sophie's due process rights. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

27

¶42 REBECCA FRANK DALLET, J. (*dissenting*). After giving Sophie notice of the timeframe for her to complete conditions necessary for the safe return of her son, the County now seeks to terminate Sophie's parental rights according to a new, more restrictive timeframe. Because Sophie received no effective notice regarding this substantive change, this process violates the heightened statutory notice requirement in termination of parental rights cases as well as Sophie's due process rights. I therefore respectfully dissent.

I

¶43 The County removed Sophie's son, Tyler, from Sophie's home in June 2016. Tyler's removal was followed by a court order, entered in August 2016, that Tyler was a child in need of protection and services (a "CHIPS" order). Such orders must provide the parent with notice "of any grounds for termination of parental rights . . . and of the conditions necessary for the child . . . to be returned to the home." Wis. Stat. § 48.356. Along with specific conditions for Tyler's safe return home, the CHIPS order listed Tyler's continuing need for protection and services ("Continuing CHIPS") as a possible ground for terminating Sophie's parental rights. See Wis. Stat. § 48.415(2). According to that order, the County could terminate Sophie's parental rights by proving both that she had not yet satisfied the safe-return conditions and that there was a substantial likelihood she would not satisfy them within the nine months following the trial. See § 48.415(2)(a)3. (2015-16).

¶44 In April 2018, the legislature altered Wis. Stat. § 48.415(2)(a)3. See 2017 Wis. Act 256. Instead of guaranteeing

1

consideration of the nine months following the trial, the law now required a parent in Sophie's position to have met the safe-return conditions as of the trial date.[1]  See § 48.415(2)(a)3.  Thus, the timeframe for Sophie to preserve her parental rights changed and became more exacting.

¶45 The County filed a petition to terminate Sophie's parental rights in June of 2018 and then an amended petition that September,[2] stating that she had not met her safe-return conditions within the new, shortened timeframe.  At that point, however, Sophie had no notice of the new timeframe.  She received notice for the first time in a CHIPS order in October 2018, after the County filed the amended termination petition.  Yet the County maintains that the stricter timeframe should apply, and that under the new timeframe, Sophie receives no "look-forward" consideration at trial.

¶46 Sophie responds that, by statute, her parental rights can be terminated only in the manner for which she had notice as of the time the County filed its amended petition.  Accordingly, she argues, the August 2016 CHIPS order controls and her parental rights therefore cannot be terminated unless the County also proves

_____

[1] If the child has not been placed outside the home for a full 15 of the most recent 22 months, the parent's substantial likelihood to meet the safe-return conditions within the remaining months is considered at trial.  Wis. Stat. § 48.415(2)(a)3.  That prospective consideration does not apply to Sophie since, as of September 2018, Tyler had been placed outside her home for more than 15 of the immediately previous 22 months.

[2] Initially, the County's stated ground for terminating Sophie's parental rights was only "abandonment."  See Wis. Stat. § 48.415(1).  The County's amended petition added the Continuing CHIPS ground at issue in this case.

2

that she is not substantially likely to meet the safe-return conditions within nine months after trial. She additionally argues that the County's attempt to terminate her parental rights under the new law falls short of what constitutional due process requires.

¶47 Sophie is correct on both accounts. The County's proceeding under the new law without first notifying Sophie violates the formal notice requirement in Wis. Stat. §§ 48.415(2)(a)1. and 48.356(2). That procedure also violates her due process rights because the County's amended petition seeks to permanently extinguish Sophie's fundamental parental rights in a substantively different manner than that detailed in any CHIPS order preceding the termination petition.

II

¶48 Parents have a fundamental right to make decisions as to the "care, custody, and control" of their children. Michels v. Lyons, 2019 WI 57, ¶15, 387 Wis. 2d 1, 927 N.W.2d 486 (adding that this is "'perhaps the oldest of the fundamental liberty interests recognized' by the United States Supreme Court" (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000))). The Fourteenth Amendment to the United States Constitution prevents the government from terminating parental rights absent due process of law. Santosky v. Kramer, 455 U.S. 745, 753-54 (1982). Due process requires procedural protections to be in place that afford parents a full opportunity to defend against losing their parental rights. Brown Cnty. v. Shannon R., 2005 WI 160, ¶¶5 n.4, 57, 64, 286 Wis. 2d 278, 706 N.W.2d 269. In determining what particular process is due, we balance private interests against the government's and consider

3

the risk of error the current procedures pose in adjudicating those private interests. Id., ¶57.

¶49 Because parental rights are fundamental, the private interest carries significant weight in the balancing analysis. Indeed, terminating parental rights is a "grievous loss" that is at least as great as any criminal penalty. Shannon R., 286 Wis. 2d 278, ¶¶58-59. The government shares the parents' private interest and must "assist parents" both in meeting the safe-return conditions and in "fulfilling their responsibilities as parents." Wis. Stat. § 48.01(1)(a). To be sure, the government also has countervailing interests in minimizing "instability and impermanence" and "eliminating the need for children to wait unreasonable periods of time" for a parent to meet the safe-return conditions. Id. But as important as those interests are, they "do[] not outweigh the requirements of fundamental fairness" and due process necessary to ensure that every proceeding to terminate parental rights is accurate and just. Shannon R., 286 Wis. 2d 278, ¶¶61-64, 71.

¶50 To that end, the legislature has adopted "heightened legal safeguards" to ensure that parents' "constitutional and other legal rights" are protected during termination proceedings. See Wis. Stat. § 48.01(ad); State v. Bobby G., 2007 WI 77, ¶63, 301 Wis. 2d 531, 734 N.W.2d 81. These safeguards accomplish two related statutory goals. One, they make sure parents have a full and "fair" opportunity to "preserve the unity of the family." See § 48.01(1)(a), (ad); Bobby G., 301 Wis. 2d 531, ¶¶57, 63. And two, they simultaneously protect the child's best interest because that interest is "generally best served" when the child is

4

"reunited with his or her family." Sallie T. v. Milwaukee Cnty. Dep't Health & Human Servs., 212 Wis. 2d 694, 707, 570 N.W.2d 46 (Ct. App. 1997), aff'd, 219 Wis. 2d 296, 581 N.W.2d 182 (1998); see also Bobby G., 301 Wis. 2d 531, ¶¶57, 63.

¶51 One important safeguard is the formal advance-notice requirement in Wis. Stat. § 48.356. A parent must be notified of both the grounds under which her parental rights can be terminated and the safe-return conditions she must meet to avoid that termination. Id. That notice must be delivered first orally and again within "any" written order placing the child outside the home. Id. Proof that such formal written notice appeared in "one or more" qualifying CHIPS orders is a prerequisite to terminating parental rights on Continuing CHIPS grounds. Wis. Stat. § 48.415(2)(a)1.

¶52 For these notice requirements to be constitutionally "effective," the notice itself "must inform the affected party of what 'critical issue' will be determined at the hearing" and "give the charged party a chance to marshal the facts in [the party's] defense." Nnebe v. Daus, 931 F.3d 66, 88 (2d Cir. 2019) (quoting Turner v. Rogers, 564 U.S. 431, 447 (2011) and Wolff v. McDonnell, 418 U.S. 539, 564 (1974)). As it pertains to notice regarding the termination of parental rights, constitutionally meaningful notice must include the timeframe applicable to each ground for termination. See Wis. Stat. § 48.415(2)(a)1.; Waukesha Cnty. v. Steven H., 2000 WI 28, ¶37, 233 Wis. 2d 344, 607 N.W.2d 607. The timeframe is essential to achieving the goal of family reunification because CHIPS proceedings regularly involve parents confronting challenges related to mental health, substance

abuse, financial insecurity, or any combination thereof. Such major obstacles require long-term planning and sustained treatment, neither of which is feasible under shifting conditions and timeframes. See State v. Patricia A.P., 195 Wis. 2d 855, 863, 537 N.W.2d 47 (Ct. App. 1995) ("[I]f the State substantially changes the type of conduct that may lead to the loss of rights without notice to the parent, the State applies a fundamentally unfair procedure.").

¶53 The County's proposed procedure here meets neither the statutory nor the constitutional notice requirements in any meaningful way. The first time Sophie received an order under Wis. Stat. § 48.356 containing notice of the new law's stricter requirements was after the County initiated termination proceedings. Notice after the fact hardly qualifies as "notice" at all. It certainly cannot have the meaningful effect of alerting a parent to the "critical issue" of how her rights might be terminated, as due process requires. See Nnebe, 931 F.3d at 88.

¶54 The majority opinion's approach papers over this constitutional defect. The majority introduces a new "best guess" concept under which the notice required by Wis. Stat. § 48.356 has to include only the "grounds which 'may be applicable' at the time the order is entered." Majority op., ¶24. Not only does the majority impermissibly add words to the statute——"at the time the order is entered" is nowhere in the text——its approach also undermines the very purpose of notice. See DOC v. Schwarz, 2005 WI 34, ¶20, 279 Wis. 2d 223, 693 N.W.2d 703 ("[C]ourts should not add words to a statute to give it a certain meaning."). According to the majority, when circumstances change such that a new ground

6

applies, notice of that new ground is not required.  Under that approach, the County could terminate parental rights without ever having given notice of specifically how those rights could be terminated.  "[I]n the absence of effective notice," such a process is "fundamentally hollow" and comes nowhere near allowing parents the full and fair opportunity to protect their rights.  See Nnebe, 931 F.3d at 88.  Given this potential for constitutional error, particularly in light of the fundamental rights at stake, the procedure sanctioned by the majority cannot pass constitutional muster.

¶55  Due process requires that a parent must have advance, formal notice of how her parental rights may be terminated.  That notice must be given in a qualifying order identified in Wis. Stat. § 48.356 and it must be issued before termination proceedings are initiated.  The County's attempt to extinguish Sophie's parental rights under the new, stricter timeframe without meaningful notice is unconstitutional.  For that reason, I respectfully dissent.

¶56  I am authorized to state that Justices ANN WALSH BRADLEY and JILL J. KAROFSKY join this dissent.

7