COURT OF APPEALS
DECISION
DATED AND FILED

November 2, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1404**

Cir. Ct. No. **2022TP4**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.S., A PERSON UNDER THE AGE OF 18:

JEFFERSON COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

C. T. S.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge. *Affirmed*.

¶1       KLOPPENBURG, P.J.[1]  C.T.S. appeals an order terminating his parental rights to his biological son, K.S.  C.T.S. argues that the Jackson County Department of Human Services (the Department) failed to prove that there were grounds for termination, and he also argues that the circuit court erroneously exercised its discretion in determining that termination was in K.S.'s best interests. I reject C.T.S.'s arguments and affirm.

## BACKGROUND

¶2       The following facts are undisputed for the purposes of this appeal. K.S., born in July 2019, is the non-marital son of C.T.S. and A.C.  K.S. was born prematurely and tested positive for marijuana, methadone, and other drugs at birth. The resulting health complications led to K.S. being hospitalized for the first two months of his life.  Upon release from the hospital, K.S. was taken into protective custody and placed in a foster home based on allegations that his mother A.C. had physically abused K.S.'s half-sibling.

¶3       In November 2019, the Department filed a Child in Need of Protection and Services (CHIPS) petition identifying K.S. as a child in need of protection and services.  By dispositional order entered in March 2020, the CHIPS court found that K.S. was at risk of neglect and physical abuse from both parents, noting that C.T.S "was present when physical abuse" of K.S.'s half-sibling occurred and that C.T.S. "has not shown appropriate protective capacity."  The dispositional order set forth conditions that C.T.S. and A.C. were required to meet in order to obtain placement.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4     Over the next two years, K.S. remained in foster placement.  A.C. ultimately agreed to voluntarily terminate her parental rights to K.S.  The Department worked to facilitate visits between C.T.S. and K.S., but C.T.S. attended only approximately 40% of the visits offered.  For a period of over three months (between February 6, 2022 and May 22, 2022) C.T.S. failed to attend any scheduled visits or otherwise communicate with K.S.

¶5     In May 2022, the Department filed a petition to terminate C.T.S.'s parental rights to K.S.  Involuntary termination of parental rights (or "TPR") cases follow a "two-part statutory procedure." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.  "In the first, or 'grounds' phase," the petitioner must prove that "one or more of the statutorily enumerated grounds for termination of parental rights exist." *Id.*; WIS. STAT. § 48.31(1).  In the second, or dispositional, phase, the circuit court decides whether it is in the best interests of the child that the parent's rights be terminated.  *Steven V.*, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2).

¶6     As grounds for the TPR petition, the Department alleged continuing need of protection or services under WIS. STAT. § 48.415(2)(a), failure to assume parental responsibility under § 48.415(6), and abandonment under § 48.415(1)(a)2. After a court trial, the circuit court determined that the Department had proven all three grounds for termination.  The case proceeded to a dispositional hearing. C.T.S. did not appear at this hearing, but his counsel did appear.  Applying statutory best interest factors set forth in WIS. STAT. § 48.426, the circuit court determined that termination was in K.S.'s best interests and issued an order terminating C.T.S.'s parental rights.  C.T.S. appeals.  I reference additional facts as needed below.

**DISCUSSION**

¶7      As noted above, C.T.S. argues that the Department failed to prove that there were grounds to terminate his parental rights to K.S., and that the circuit court erroneously exercised its discretion in determining that termination was in K.S.'s best interests.  I address each argument in turn.

¶8      At the grounds phase in a TPR proceeding, the petitioner (here, the Department) must show by clear and convincing evidence that one or more of the twelve statutory grounds for termination exist.  *Steven V.*, 271 Wis. 2d 1, ¶¶24-25. A fact-finder's determination that grounds for termination exist will be sustained if there is credible evidence to support the determination.  *See St. Croix Cnty. DHHS v. Michael D.*, 2016 WI 35, ¶29, 368 Wis. 2d 170, 880 N.W.2d 107.

¶9      Here, as noted above, the Department alleged three grounds for termination: continuing need of protection or services ("continuing CHIPS"), failure to assume parental responsibility, and abandonment.  The Department needed to prove only one of these grounds to prevail at the grounds phase.  As I next explain, the Department introduced credible evidence to support the continuing CHIPS ground for termination.

¶10      Generally, to prove the continuing CHIPS ground under WIS. STAT. § 48.415(2)(a), the petitioner must prove that:  (1) the child has been placed outside the home for a cumulative total of six months or longer pursuant to a court order containing the termination of parental rights notice required by law; (2) the child welfare agency (here, the Department) has made a reasonable effort to provide court-ordered services; and (3) the parent has failed to meet the conditions

4

established for the safe return of the child to the home.[2] *See* § 48.415(2)(a); *see also* WIS JI—CHILDREN 324.

¶11    At trial, C.T.S. stipulated that the first element had been met. On appeal, C.T.S. appears to argue that the Department did not introduce sufficient evidence to show either that C.T.S. failed to meet the conditions for return or that the agency made reasonable efforts to provide services. The record refutes these arguments.

¶12    The Department introduced uncontroverted evidence that C.T.S. had not met return conditions despite the agency's efforts to help him meet those conditions, including testimony regarding specific conditions as follows.

¶13    C.T.S. was required to attend a parenting class approved by his case manager. C.T.S.'s case manager referred him to three parenting classes between 2020 and 2022, and assisted him with registration, but C.T.S. did not complete any of these classes.

¶14    C.T.S. was required to participate in services to support his mental health and wellbeing. Although C.T.S. was seeing a therapist at the time the dispositional order was entered, he ceased attending therapy appointments in February 2021 and did not follow through with referrals from his case manager to other providers.

---

[2] If the child has been "placed outside the home for less than 15 of the most recent 22 months," the Department must also prove that "that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months." WIS. STAT. § 48.415(2)(a)3. Here, this additional element does not apply, because K.S. had been in foster placement continuously for over 30 months at the time the TPR petition was filed.

¶15   C.T.S. was required to "maintain absolute sobriety from any illegal drugs" and submit to drug screening. However, C.T.S. refused to participate in multiple drug screening attempts. On at least one occasion, C.T.S. tested positive for cocaine. C.S. admitted to using heroin, and admitted that he had been involved in a car accident in May 2022 after losing consciousness due to heroin use while driving.

¶16   C.T.S. was required to participate in medical and dental care appointments for K.S. C.T.S. was consistently informed of those appointments but did not attend any.

¶17   C.T.S. was required to "maintain a safe, fitting, and stable home" for K.S. However, C.T.S. resided with partners who had a history of domestic violence. At the time of the dispositional order, C.T.S. lived with K.S.'s mother A.C., who, as noted above, faced criminal charges of physical abuse of K.S.'s half-sibling. C.T.S. later moved in with a new significant other, who had a criminal domestic violence conviction. The circuit court found that these partners rendered C.T.S.'s home environment unsafe for K.S., and C.T.S. does not challenge this finding on appeal.

¶18   C.T.S was required to coordinate with a domestic violence organization to develop a safety plan for himself and K.S. C.T.S.'s case manager referred C.T.S. to service providers who could help C.T.S. fulfill this condition, but C.T.S. did not follow up with these providers or complete any domestic violence programming.

¶19   C.T.S. was required to provide advance notice of any change in contact information. C.T.S. frequently changed phone numbers without providing

advance notice of the changes, leading to difficulties in communication and coordination between C.T.S. and his case manager.

¶20 C.T.S. was required to cooperate with a family interaction plan, which included attending scheduled visits with K.S. C.T.S.'s case manager continually worked with C.T.S. to adjust the visitation schedule as necessary to give C.T.S. "the most opportunity to attend." Initially, C.T.S. was scheduled for two in-person visits with K.S. per week. However, C.T.S. did not attend these visits consistently, and so the schedule was changed to only one visit per week. After March 2020, C.T.S.'s visits were switched to remote visits by Zoom due to the COVID pandemic. When in-person visits became available again in June 2020, C.T.S. asked that the visits remain by Zoom, purportedly because he was concerned about exposing K.S. to COVID infection.

¶21 C.T.S. did not consistently attend scheduled Zoom visits. C.T.S. found the Zoom visits to sometimes be "difficult" because K.S. was not always attentive. The case manager worked with K.S.'s foster parents to devise ways to make Zoom visits meaningful, given the inherent limitation of K.S.'s young age. K.S.'s foster parent worked to "eliminate all barriers" that would interfere with Zoom visits, and took measures including ensuring that K.S. was fed and changed before the visits and generally keeping K.S. in a confined area during visits. C.T.S. eventually asked his case manager to resume in-person visits, but the case manager required C.T.S. to first attend four or five Zoom visits in a row, which he did not do. Ultimately, C.T.S. only attended approximately 40% of all visits offered.

¶22 The circuit court found that C.T.S. did not meet any of the above-listed conditions for return, and C.T.S. does not argue that any of those findings

are clearly erroneous. *See* WIS. STAT. § 805.17(2) (a circuit court's "[f]indings of fact shall not be set aside unless clearly erroneous"). C.T.S.'s primary argument appears to relate to the Department's efforts to facilitate visits with K.S.; specifically, C.T.S. argues that the Department failed to make reasonable efforts to facilitate visits with K.S. "in light of the [COVID] limitations, the need for video visits with K.S." and the Department's failure "to assure productive visits." This argument is unpersuasive. As explained above, the Department introduced evidence that the case manager and the foster parents took measures to make Zoom visits meaningful but that, despite these efforts, C.T.S. attended only 40% of all visits offered. C.T.S. contends that technical difficulties interfered with his Zoom visits. However, the case manager testified that C.T.S. never reported that technical difficulties prevented him from attending Zoom visits, and instead told her that he did not attend visits due to his work schedule or due to "being tired." C.T.S. suggests that his case manager unreasonably prevented him from resuming in-person visits, but C.T.S. does not articulate any reason why the case manager's prerequisite for resuming in-person visits (attending four or five Zoom visits in a row) was unreasonable.

¶23 C.T.S. also argues that he was "working diligently on his conditions of return." C.T.S.'s implication appears to be that, if given more time, he was likely to meet the conditions. However, if a child has been placed out of the home for "15 of the most recent 22 months" (as is the case here), the continuing CHIPS statute does not permit consideration of whether it is likely that the parent would eventually satisfy return conditions. *See Eau Claire Cnty. DHHS v. S.E.*, 2021 WI 56, ¶9, 960 N.W.2d 391 (WISCONSIN STAT. § 48.415(2)(a)3. "eliminate[s] consideration by the factfinder of the likelihood the parent would meet the conditions for return of the child to the parent's home if the child had already been

placed outside the parent's home for at least '15 of the most recent 22 months.'"). In any event, C.T.S. failed to meet numerous return conditions for over two years, and C.T.S. does not point to any evidence showing that he was likely to meet those conditions if given more time.

¶24    In sum, C.T.S. has not shown that the Department failed to introduce sufficient evidence to prove the continuing CHIPS ground for termination under WIS. STAT. § 48.415(2)(a). Because the Department need only prove one ground for termination, I need not address whether there was sufficient evidence to prove the Department's two other grounds for termination.[3] *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (this court needs not address other issues when one is dispositive).

¶25    I turn to C.T.S.'s argument that the circuit court erroneously exercised its discretion in determining that termination was in K.S.'s best interests.

¶26    At the dispositional phase of a TPR proceeding, the circuit court determines whether termination of the parent's parental rights is in the best interests of the child, guided by the best interest factors set forth in WIS. STAT.

---

[3] While my conclusion that the Department proved the continuing CHIPS ground is dispositive, I note that C.T.S. does not refute the Department's and the guardian ad litem's arguments that the Department also proved the abandonment ground. To prove abandonment, the Department was required to show, among other things, that C.T.S. had failed to visit or communicate with K.S. for three months or longer. *See* WIS. STAT. § 48.415(1)(a)2. On appeal, although C.T.S. makes no argument in his appellant's brief that the Department failed to prove abandonment, both the Department and the guardian ad litem argue in their responsive briefs that the Department introduced credible evidence to support this ground. C.T.S. does not respond to these arguments in his reply brief, and I may deem C.T.S.'s failure to respond to be a concession that the Department proved the abandonment ground. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (lack of a reply to respondent's arguments may be taken as a concession). However, as stated, I address on the merits whether the Department proved the continuing CHIPS ground and explain why I reject C.T.S.'s arguments that the Department did not.

§ 48.426. *Julie A.B.*, 255 Wis. 2d 170, ¶¶29, 37. These factors are: (a) the "likelihood of the child's adoption after termination";[4] (b) the "age and health of the child"; (c) whether the child has "substantial relationships with the parent or other family members," and whether severing those relationships would harm the child; (d) the "wishes of the child"; (e) the "duration of the separation of the parent from the child"; and (f) whether the child can "enter into a more stable and permanent family relationship as a result of the termination." Sec. 48.426. The court's decision is discretionary, and will be affirmed so long as the court "employs a rational thought process based on an examination of the facts and an application of the correct standard of law." *Julie A.B.*, 255 Wis. 2d 170, ¶43.

¶27 As noted, C.T.S. did not appear at the dispositional hearing, but his attorney did appear. The circuit court said that it would not find C.T.S. in default, and proceeded with the hearing. The court received evidence and determined that termination was in K.S.'s best interests after considering the statutory best interest factors.

¶28 In considering the statutory factors, the circuit court found that adoption was "very likely" if C.T.S.'s parental rights were terminated, noting that K.S.'s foster parents wished to adopt K.S. and that the court was aware of no facts that would prevent adoption. The court found that K.S. "only knows one mom and dad," his foster parents, and that this was a "good thing," suggesting that it was in K.S.'s best interests to terminate C.T.S.'s parental rights so that the foster parents could adopt K.S. and ensure he stayed in a stable home. The court found

---

[4] *See also* WIS. STAT. § 48.81(2) (a child may be adopted if "[t]he parental rights of both of the child's parents with respect to the child have been terminated").

that K.S. was in "remarkable good health" in his foster home, and that this fact was particularly noteworthy given the complications related to K.S.'s premature birth. The court did not find that K.S. would be harmed by the termination of C.T.S.'s parental rights, noting that K.S. had never lived in C.T.S.'s home and that K.S. had no relationships with C.T.S.'s extended family.[5]

¶29    C.T.S. argues that the circuit court erroneously exercised its discretion because it improperly weighed the best interest factors. The weighing of the factors is for the circuit court, not this court. *See State v. Margaret H.*, 2000 WI 42, ¶29, 234 Wis. 2d 606, 610 N.W.2d 475 (this court "cannot mandate the relative weight to be placed" on any best interest factor). In any event, C.T.S. does not identify any specific factor that the court weighed improperly.

¶30    Rather, C.T.S. argues that the circuit court improperly "focus[ed] on the fact that C.T.S. did not appear at the hearing in this case and thus he forfeited his parental rights to K.S." This argument is not supported by the record. Although C.T.S. did not appear, the court expressly declined to find that C.T.S. was in default and did not at any time say that C.T.S. had "forfeited" his parental rights. Rather, as explained above, the court addressed the statutory best interest factors, and, based on the record, determined that termination was in K.S.'s best interests. Accordingly, C.T.S. has not shown that the circuit court erroneously exercised its discretion.

---

[5] Consistent with K.S.'s young age, no evidence was introduced as to K.S.'s wishes, and so WIS. STAT. § 48.426(3)(d), the "wishes of the child," is inapplicable here.

## CONCLUSION

¶31 For all of these reasons, I affirm the circuit court's order terminating C.T.S.'s parental rights to K.S.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.